# In the United States Court of Federal Claims

|   |   |
|---|---|
| RAGHUVEER K. MENDU, | No. 17-cv-738 T |
| Plaintiff, |  |
| v. |  |
| THE UNITED STATES, | Filed: April 7, 2021 |
| Defendant. |  |

*Shahzad A. Malik*, Nixon Peabody, LLP, Los Angeles, California for Plaintiff.

*Jason Bergmann*, United States Department of Justice, Tax Division, Washington, D.C. for Defendant.  With him on the briefs are *Richard E. Zuckerman*, Principal Deputy Assistant Attorney General; *David Pincus*, Chief, Court of Federal Claims Section, Washington, D.C.

## MEMORANDUM AND ORDER

This case arises out of the assessment of penalties against Plaintiff, Raghuveer Mendu, under 31 U.S.C. § 5311 *et seq.* (the Bank Secrecy Act or BSA), for alleged failure to timely file reports of foreign bank accounts — commonly known as FBAR penalties.

As discussed infra, this case has a complicated procedural history.  On June 2, 2017, Plaintiff filed an action in this Court challenging the assessment of a $752,920 FBAR penalty[1]

---

[1] In his complaint, Plaintiff alleges that the total FBAR penalty assessed against him is $752,919.36.  *See* Compl. ¶ 4.  Including interest, other penalties, and fees, Plaintiff alleges that the asserted balance due is $1,012,531.76.  *Id.* ¶ 5.  However, the exhibit attached to his complaint contains an IRS form that states the "TOTAL proposed penalty" is $752,920.  Compl. Ex. 1 at 7.  Defendant, in its counterclaim, claims that Plaintiff is liable for $752,920, "plus a 31 U.S.C. § 3717(e)(2) penalty and interest accruing under law until the liability is paid in full."  Def. Countercl. ¶ 32.  For the purposes of this Memorandum and Order, the Court will refer to the total FBAR penalty amount as $752,920.

under 31 U.S.C. § 5321(a)(5) (willful FBAR penalty).  Crucially, Plaintiff made only a partial payment of $1,000 against the FBAR penalty before filing his complaint.  Complaint (ECF No. 1) (Compl.) ¶ 6.  Thus, Mr. Mendu challenges the assessment of the $752,920 FBAR penalty via an illegal exaction claim in which he seeks to recover the $1,000 payment from Defendant United States.  *Id.* ¶¶ 5-6.

On October 3, 2017, Defendant filed its answer and counterclaim seeking payment of the FBAR penalty plus interest.  *See* Defendant's Answer and Counterclaim (ECF No. 8) (Def. Ans.) or (Def. Countercl.).[2]  Importantly, both parties agree that this Court does not have independent jurisdiction to hear Defendant's counterclaim.  *See* Plaintiff's Reply in Support of Motion to Dismiss under RCFC 41(a)(2) (ECF No. 49) (Pl. Rule 41(a)(2) Reply) at 4; Defendant's Response to Motion for Voluntary Dismissal of Plaintiff's Complaint (Def. Resp. to Mot. for Voluntary Dismissal) (ECF No. 48) at 4-5.

Three motions are currently pending before the Court that include primary and alternative arguments by each party.  *See* Plaintiff's Motion to Dismiss (Pl. Rule 7(b)(1) Mot. or Rule 7(b)(1) Motion) (ECF No. 30); Motion to Dismiss Under RCFC 41(a)(2) (ECF No. 47) (Pl. Rule 41(a)(2) Mot. or Rule 41(a)(2) Motion); "Cross-Motion to Transfer Venue; Memorandum in Response to Motion to Dismiss for Lack of Jurisdiction and in Support of Cross-Motion to Transfer Venue" (ECF No. 34) (Def. Cross-Mot.).  In his Rule 7(b)(1) Motion, Plaintiff oddly contends that this Court does not have jurisdiction over his own illegal exaction claim and consequently that no jurisdiction exists to hear Defendant's counterclaim.  Accordingly, Plaintiff urges this Court to

---

[2] *See* Def. Countercl. ¶ 32 (stating the amount at $752,920).  The parties allege this penalty could include additional interest, penalties and fees, including (a) interest accruing at 1% per year, (b) penalties accruing at 6% per year after ninety days, and (c) a "debt servicing fee" of approximately 18% to 28%.  Compl. ¶ 5; *see also* Def. Countercl. ¶ 32 (citing 31 U.S.C. § 3717(e)(2)).

dismiss this action in its entirety, including his own complaint and defendant's counterclaim.  *See* Pl. Rule 7(b)(1) Mot.  In his subsequently filed Rule 41(a)(2) Motion, Plaintiff alternatively proposes that, even if this Court has jurisdiction over Plaintiff's illegal exaction claim, it should still dismiss Plaintiff's own complaint under United States Court of Federal Claims Rule (Rule) 41(a)(2) and transfer Defendant's counterclaim to the United States District Court for the Central District of California under 28 U.S.C. § 1631.  *See* Pl. Rule 41(a)(2) Mot. 1-2.

In contrast, Defendant contends that this Court has jurisdiction over Plaintiff's illegal exaction claim but does not have independent jurisdiction over Defendant's counterclaim.  *See* Def. Resp. to Mot. for Voluntary Dismissal at 4.  Consequently, Defendant argues that the Court cannot dismiss this action under Rule 41(a)(2) over Defendant's objections. *See id.*  Alternatively, Defendant argues that, if this Court were to find that it does not have jurisdiction over Plaintiff's illegal exaction claim, Defendant's counterclaim should be transferred to the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1631.  Def. Cross-Mot. at 18-21.

As explained further below, the well-established *Flora* "full payment rule" requires a plaintiff to make payment of the full tax amount before a suit for the refund of "any internal-revenue tax" can be brought in this court.  *See Diversified Grp., Inc. v. United States*, 841 F.3d 975, 981 (Fed. Cir. 2016) (citing *Flora v. United States*, 362 U.S. 145, 177 (1960) and discussing *Flora's* "full payment rule").  At issue in the present case is whether FBAR penalties are internal-revenue taxes.  If FBAR penalties are internal-revenue taxes, then the *Flora* full payment rule applies, and this Court lacks jurisdiction since Plaintiff has not paid the full FBAR penalty assessed against him.  Conversely, if FBAR penalties are not internal-revenue taxes, then the *Flora* full

payment rule does not apply, and this Court has jurisdiction over Plaintiff's $1,000 illegal exaction claim.

This Court holds that FBAR penalties are not internal-revenue taxes and, therefore, are not subject to the *Flora* full payment rule. Accordingly, this Court holds that it has jurisdiction over Plaintiff's illegal exaction claim. Because jurisdiction exists, this Court further holds that it cannot dismiss Plaintiff's complaint over Defendant's objection pursuant to Rule 41(a)(2) or transfer Defendant's counterclaim to a district court under 28 U.S.C. § 1631. Accordingly, the Court **DENIES** Plaintiff's Motion to Dismiss under Rule 7(b)(1) (ECF No. 30), **DENIES** Defendant's Cross-Motion to Transfer Venue (ECF No. 34), and **DENIES** Plaintiff's Motion to Dismiss under Rule 41(a)(2) (ECF No. 47).

## LEGAL FRAMEWORK

The Bank Secrecy Act and its implementing regulations mandate that "United States person[s]" who have relationships with foreign financial agencies are required to disclose such relationships to the Department of the Treasury. *See* 31 U.S.C. § 5314(a); 31 C.F.R. § 1010.350. To properly disclose, those U.S. persons must file a Report of Foreign Bank and Financial Accounts (FBAR) with the Internal Revenue Service (IRS) on or before June 30 of the year following the calendar year for which the financial account is maintained. 31 U.S.C. § 5314(a); 31 C.F.R. § 1010.306(c); *see also Norman v. United States*, 942 F.3d 1111, 1114 (Fed. Cir. 2019). If disclosure is not made, then, pursuant to 31 U.S.C. § 5321(a)(5)(A), the Secretary of the Treasury may impose civil money penalties on any person who fails to file a required FBAR. *See Norman*, 942 F.3d at 1114. The civil penalties for failure to file are graduated according to the gravity of the offense. *Id.*

The Treasury may assess FBAR penalties "any time before the end of the 6-year period beginning on the date of the transaction with respect to which the penalty is assessed." 31 U.S.C. § 5321(b)(1). After timely assessment, the Treasury may sue for collection, provided it does so within two years of either the date of assessment or the date on which the person was convicted of a criminal FBAR violation, whichever is later. *See* 31 U.S.C. § 5321(b)(2).

<u>BACKGROUND</u>

According to the complaint, Plaintiff is a successful, serial technology entrepreneur who is now in the Indian venture capital business. Compl. Ex 3 at 2. In July 2007, Plaintiff and his business partner co-founded Venture East Mauritius Advisors (VMIA) an investment company in Mauritius. Compl. ¶ 12; Compl. Ex. 3 at 3. Plaintiff and his business partner co-owned the company, directly and indirectly, from its founding and throughout 2009. Compl. ¶ 13. Two separate bank accounts, set up at different times, were maintained in connection with VMIA — Account Ending in 1788 (VMIA 1) and Account Ending in 3482 (VMIA 2) — and both accounts were held by the State Bank of Mauritius. Compl. ¶ 23; Compl. Ex. 3 at 1-2. Plaintiff, as co-owner of VMIA, had signatory authority over the two accounts. Compl. ¶ 23. Plaintiff has also maintained a personal account with the Indian bank Andhra Bank Amerpeet (the Personal Account). Compl. ¶ 25. The Personal Account is unrelated to VMIA. *Id.* Plaintiff deposited into the Personal Account nominal amounts of rental income that he earned from a home he owns in India. Compl. ¶ 25. However, Plaintiff did not file an FBAR for the 2009 calendar year for any

of these three accounts, as required by 31 U.S.C. § 5314(a) and its accompanying regulations.  *See* Def. Countercl. ¶ 24.[3]

Mr. Mendu alleges that he first learned of the FBAR reporting requirements in 2011; and, upon learning of these requirements, he decided to file delinquent FBAR forms.  Compl. ¶¶ 40, 46-48; Compl. Ex. 3 at 6.  In his haste to file these forms, Mr. Mendu alleges that he made unintentional misstatements in these delinquent FBAR filings.  Compl. Ex. 3 at 6.  Mr. Mendu corrected these misstatements in June of 2012.  Compl. ¶ 49.  In 2013, the IRS initiated an audit of Mr. Mendu.  Compl. Ex. 3 at 6.  This audit ultimately resulted in the IRS finding that Mr. Mendu had willfully failed to file a complete and accurate FBAR.  Compl. ¶¶ 56-57, Ex. 1.  Accordingly, the IRS assessed Mr. Mendu a civil penalty for $752,920, attributable to his allegedly willful failure to file an FBAR for the 2009 calendar year.  Compl. ¶¶ 4, 62; *see also* Def. Countercl. ¶ 2.[4] As noted, the penalties at issue in this case arise from three accounts, two held by VMIA, and a third personal account in India at Andhra Bank as reflected by the chart below:

---

[3] Taxpayers may report such foreign financial accounts by filing an FBAR on FinCEN Form 114. *See Report of Foreign Bank and Financial Accounts (FBAR)*, Internal Revenue Service, https://www.irs.gov/businesses/small-businesses-self-employed/report-of-foreign-bank-and-financial-accounts-fbar (last visited April 6, 2021).  For the purposes of this Memorandum and Order, the Court will reference the form as an FBAR form or filing.

[4] The exact date of the assessment varies in the parties' pleadings.  *Compare* Compl. ¶ 56 (alleging that Plaintiff received the IRS assessment "[i]n or about May of 2016") *with* Def. Countercl. ¶¶ 2, 27, 31 (alleging that the IRS assessed the penalty on June 16, 2016).

| Account | Period | Assessed Amount |
|---|---|---|
| Andhra Bank Account Ending in 078 (the Personal Account) | 2009 Calendar Year | $3,165 |
| State Bank of Mauritius Account Ending in 1788 (VMIA 1) | 2009 Calendar Year | $454,105 |
| State Bank of Mauritius Account Ending in 3482 (VMIA 2) | 2009 Calendar Year | $295,650 |
| | | **Total**: $752,920 |

Compl. Ex. 1 at 7.  Mr. Mendu contested the IRS's $752,920 penalty with the IRS Office of the Area Director of Appeals.  Compl. ¶¶ 69-70, Ex. 3, Ex. 4.  On February 3, 2017, the IRS Office of Appeals sustained the willful FBAR penalty despite Mr. Mendu's objections.  *Id*. ¶ 71, Ex. 5.  On or about May 22, 2017, Plaintiff made a partial payment of $1,000 on the $752,920 penalty.  *Id*. ¶ 73, Ex. 6.  This action followed.

On June 2, 2017, Plaintiff filed the present complaint challenging the IRS's FBAR assessment.  *See* Compl. ¶¶ 74-78.[5]  Specifically, Plaintiff alleges that the Defendant's FBAR penalty was erroneous and therefore resulted in an illegal exaction of the Plaintiff's $1,000 partial payment.  Compl. ¶¶ 4, 62.

---

[5] Plaintiff's complaint also included a declaratory judgment claim founded on the Administrative Procedure Act.  Compl. ¶ 11.  This second cause of action was dismissed by Order of the Court on October 19, 2017, pursuant to the Joint Stipulation for Partial Dismissal filed on October 18, 2017.  *See* ECF Nos. 9 and 10.  The only cause of action remaining from the complaint is one for illegal exaction.

On October 3, 2017, Defendant filed an answer and counterclaim for the unpaid portion of the disputed FBAR penalty, asserting that this Court has jurisdiction over its counterclaim pursuant to 28 U.S.C. §§ 1503 and 2508.  *See* Def. Ans. and Countercl.

The parties completed fact discovery on November 21, 2018.  *See* December 3, 2018 Joint Status Report (ECF No. 22) at 2.  Shortly after the close of discovery, the parties filed a joint status report, notifying the Court that this case should be stayed pending the resolution of an appeal to the United States Court of Appeals for the Federal Circuit (Federal Circuit) in *Norman v. United States*, 138 Fed. Cl. 189, 196 (Fed. Cl. 2018), *appeal docketed*, No. 18-2408, (Fed. Cir. Sept. 18, 2018).  *See* December 7, 2018 Joint Status Report (ECF No. 24) at 1.  The parties stated that the Federal Circuit's decision in that case would be relevant to determining  "whether the amount of the FBAR penalty imposed upon Plaintiff for the 2009 year under 31 U.S.C. [§] 5321 should have been limited to no more than $100,000 pursuant to 31 C.F.R. [§] 1010.820."  *Id.* (internal quotations and citations omitted).  On December 11, 2018, the prior judge overseeing this case stayed this action pending the Federal Circuit's decision in *Norman*.  *See* December 11, 2018 Order Staying Proceedings (ECF No. 25).

On November 8, 2019, the Federal Circuit issued its decision in *Norman v. United States*, 942 F.3d 1111 (Fed. Cir. 2019); as a result, the stay expired.  In *Norman*, the Federal Circuit held that a now out-of-date Treasury Regulation did not cap FBAR penalties for willful violations at $100,000.  The Federal Circuit's ruling in *Norman*, which binds this Court, may have given Mr. Mendu pause about continuing litigation in this circuit because on January 20, 2020 — facing a counterclaim against him for potentially 700 times greater than the amount sought in his complaint — Mr. Mendu sought to dismiss his own complaint for lack of subject-matter jurisdiction, along with Defendant's counterclaim.  *See generally* Pl. Rule 7(b)(1) Mot.  In his Rule 7(b)(1) Motion,

filed in 2020, Plaintiff based his sudden change in course on a footnote in in a case decided two years earlier, *Bedrosian v. United States*, 912 F.3d 144, 149 n.1 (3d Cir. 2018). In that footnote, which appears to be dictum, the United States Court of Appeals for the Third Circuit (Third Circuit) commented, without substantive analysis, that it was "inclined to believe" that FBAR penalties are internal-revenue laws within the scope of 28 U.S.C. § 1346(a)(1), and are therefore subject to the full payment rule as articulated in *Flora v. United States*, 362 U.S. 145, 164 (1960). Pl. Rule 7(b)(1) Mot. at 4-5, 7-11.[6] Accordingly, Plaintiff now believes that the *Flora* full payment rule requires this Court to dismiss Plaintiff's claim for illegal exaction of his $1,000 partial payment because Plaintiff has not fully paid the FBAR penalty at issue. Pl. Rule 7(b)(1) Mot. at 3-4. Mr. Mendu notes that, because this Court does not have independent jurisdiction over the Defendant's counterclaim for $752,920, this Court must dismiss the Defendant's counterclaim as well. Pl. Rule 7(b)(1) Mot. at 2, 11-14; Pl. Resp. to Cross-Mot. at 12-15.

Defendant opposes Plaintiff's Rule 7(b)(1) Motion, arguing that claims for the illegal exaction of FBAR penalties are not subject to the *Flora* full payment rule. Def. Cross-Mot. at 8-17; Def. Reply for Cross-Mot. at 3-8. Specifically, Defendant argues that FBAR penalties are not subject to the *Flora* full payment rule because: (1) FBAR penalties do not arise under the internal-revenue laws because they are authorized in Title 31 ("Money and Finance") of the U.S. Code (Def. Cross-Mot. at 10-11; Def. Reply for Cross-Mot. at 5-6); (2) FBAR penalties are not subject to the Internal Revenue Code's collection procedures, which permit the IRS to collect penalties without first obtaining a judgment (Def. Cross-Mot. at 12-13; Def. Reply for Cross-Mot.

---

[6] Additionally, Defendant noted in its brief that the issue identified in the *Bedrosian* footnote was not subject to briefing by the parties before the Third Circuit. *See* Def. Cross-Mot. at 15.

at 7); and (3) no policy would be furthered by applying a full payment rule to suits alleging the illegal exaction of an FBAR penalty (Def. Cross-Mot. at 12-13; Def. Reply for Cross-Mot. at 8).

During briefing on Plaintiff's Rule 7(b)(1) Motion to Dismiss, Defendant requested that this Court transfer Defendant's counterclaim to the United States District Court for the Central District of California should this Court decide that it does not have jurisdiction over Plaintiff's illegal exaction claim.   *See* Def. Cross-Mot. at 18-21; Def. Reply for Cross-Mot. at 9-15. Defendant noted that a transfer in that circumstance would prevent a dispute relating to the statute of limitations that could occur if the Defendant must refile in the district court.  Def. Cross-Mot. at 20-21; Def. Reply for Cross-Mot. at 10.  Plaintiff opposed Defendant's cross-motion to transfer venue.  Pl. Resp. to Cross-Mot. at 12-16.

On July 15, 2020, this Court held oral argument regarding (1) Plaintiff's motion to dismiss his own complaint and Defendant's counterclaim, and (2) Defendant's cross-motion to transfer Defendant's counterclaim.  *See* May 11, 2020 Order (ECF No. 40).[7]  At oral argument, the Court previewed for the parties that it believes this Court has jurisdiction over Plaintiff's claim.  *See* July 15, 2020 Transcript (ECF No. 42) (Tr.) at 38:5-23.  The Court also noted that Plaintiff's Rule 7(b) Motion to Dismiss could be more appropriately analyzed under the rubric of Rule 41(a)(2).  *Id.* Accordingly, the Court requested briefing regarding their positions on dismissal under Rule 41(a)(2) and, based on those positions, whether the Court should transfer Defendant's counterclaim to the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1631.  *Id.* at 14:2-9, 45:12-20.

Following oral argument, and in light of the Court's position concerning jurisdiction over Plaintiff's complaint, the parties effectively swapped positions with respect to transfer — Plaintiff

---

[7] On February 27, 2020, this case was reassigned to the undersigned judge.  (ECF No. 35.)

now argues that transferring Defendant's counterclaim to the Central District of California pursuant to 28 U.S.C. § 1631 is appropriate, while Defendant opposes such a transfer.  *See generally* Defendant's Status Report Regarding Voluntary Dismissal of Plaintiff's Complaint (ECF No. 43); Plaintiff's Status Report (ECF No. 44); Pl. Rule 41(a)(2) Mot.; Defendant's Response to Motion for Voluntary Dismissal of Plaintiff's Complaint.  In his Rule 41(a)(2) Motion, Plaintiff maintains that his preferred approach would be for the Court to dismiss Mr. Mendu's own complaint for lack of jurisdiction, but states that he consents to dismissal under Rule 41(a)(2) and to the transfer of Defendant's counterclaim under 28 U.S.C. § 1631 "as long as the dismissal is unconditional and without prejudice."  *See* Pl. Rule 41(a)(2) Mot. at 2.  Defendant, in response, contends that Plaintiff's Rule 41(a)(2) Motion to Dismiss amounts to forum shopping and is squarely prohibited by Rule 41(a)(2).  Def. Resp. to Mot. for Voluntary Dismissal at 2-4.

<u>DISCUSSION</u>

I.   <u>Plaintiff's Rule 7(b)(1) Motion to Dismiss His Own Complaint Fails because the Court has Jurisdiction to Hear Plaintiff's Claims.</u>

Pursuant to the Tucker Act, the United States Court of Federal Claims has jurisdiction over illegal exaction claims "when the 'plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum' that 'was improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation.'"  *Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1572 (Fed. Cir. 1996) (quoting *Eastport S.S. Corp. v. United States*, 372 F.2d 1002, 1007 (Ct. Cl. 1967)).  "The refund of a penalty improperly exacted pursuant to an Act of Congress is a substantive right for money damages" and constitutes an illegal exaction claim under the Tucker Act.  *Trayco, Inc. v. United States*, 994 F.2d 832, 837 (Fed. Cir. 1993).

It is also well-established that, before a tax refund suit can be brought in this Court, a plaintiff must first pay the tax in full. *See Flora v. United States*, 362 U.S. 145, 177 (1960) (*Flora II*). The Supreme Court has interpreted the phrase "any internal-revenue tax" in 28 U.S.C. § 1346(a)(1) as requiring full payment of the challenged tax before a district court has jurisdiction to hear a refund suit. *See Flora v. United States*, 357 U.S. 63 (1958) (*Flora I*), *on reh'g*, 362 U.S. 145 (1960) (*Flora II*). Although 28 U.S.C. § 1491(a)(1), and not section 1346, typically provides this Court with jurisdiction over refund suits, the *Flora* full payment rule also applies to refund suits before this Court. *See e.g.*, *Shore v. United States*, 9 F.3d 1524, 1526 (Fed. Cir. 1993); *Rocovich v. United States*, 933 F.2d 991, 993-94 (Fed. Cir. 1991) (finding *Flora* full payment rule barred a tax refund suit when the plaintiffs had not paid the full amount of the interest and penalties assessed against them (citing *Lambropoulos v. United States*, 18 Cl. Ct. 235 (1989)); *DiNatale v. United States*, 12 Cl. Ct. 72 (1987) (*Flora* full payment rule barred a tax refund suit when deficiencies, penalties, and interest assessed had not been paid in full); *Rodewald v. United States*, 231 Ct. Cl. 962 (1982) (*Flora* full payment rule barred a tax refund suit where the plaintiff had paid only some of the installments under an agreed payment plan); *Green v. United States*, 220 Ct. Cl. 712 (1979) (unpublished) (*Flora* full payment rule barred suit where plaintiff had not made full payment of the assessed income tax liability).

The parties agree that the *Flora* full payment rule only applies if it is an "internal-revenue tax" as that term is used in section 1346(a)(1). *See* Pl. Rule 7(b)(1) Mot. at 7; Def. Resp. at 4. As noted, if FBAR penalties are considered internal-revenue taxes, then the *Flora* full payment rule applies, and this Court lacks jurisdiction over Plaintiff's tax refund claim because the Plaintiff has not paid the assessed $752,920 FBAR penalties in full. Conversely, if FBAR penalties are not internal-revenue taxes then *Flora* full payment rule does not apply, and this Court has jurisdiction

over Plaintiff's $1,000 illegal exaction claim. *See Ibrahim v. United States*, 112 Fed. Cl. 333, 336 (2013) (finding that while tax refund claims are subject to the *Flora* full payment rule, the full payment rule does not apply to other illegal exaction claims).

As explained below, this Court holds that an FBAR penalty is not an internal-revenue tax and, therefore, is not subject to the *Flora* full payment rule.

A.   The Structure and Purpose of the Bank Secrecy Act Demonstrates that the *Flora* Full Payment Rule Does Not Apply.

The structure of the BSA indicates that the FBAR is not an internal-revenue tax.   The FBAR penalty is authorized in Title 31 ("Money and Finance") of the United States Code, not the Internal Revenue Code (I.R.C.), which is found in Title 26 of the United States Code.   This distinction is not a mere technicality.   The Internal Revenue Code was initially created in an effort "[t]o consolidate and codify the internal revenue laws of the United States."   Internal Revenue Code of 1939, ch. 2, 53 Stat. 1.   Thus, although section 1346 does not explicitly limit internal-revenue taxes to Title 26 taxes, Congress's placement of FBAR penalties outside Tile 26 distinguishes FBAR penalties from internal-revenue laws.   *See id.*   Moreover, because the FBAR penalties are not located within Title 26, the FBAR penalties are not subject to the various statutory cross-references that equate "penalties" with "taxes."   *See e.g.*, *Seven-Sky v. Holder*, 661 F.3d 1, 39 (D.C. Cir. 2011) (Kavanaugh, J., dissenting) (discussing, in dissent, how I.R.C. § 6201(a) treats "assessments of all taxes (including . . . assessable penalties) imposed by this title" to be taxes for purposes of the IRS's assessment authority), *abrogated by Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 546 (2012) ("Section 6201(a) instructs the Secretary that his authority to assess taxes includes the authority to assess penalties, but it does not equate assessable penalties to taxes for other purposes.").   Conversely, there is no such cross-reference equating an FBAR penalty to a

tax.  Indeed, at oral argument both parties acknowledged that they were unable to find any example of a penalty outside Title 26 that is subject to the *Flora* full payment rule.  Tr. 33:21-25.

Next, *Flora I* and *II's* concerns with permitting tax refund suits prior to full payment of the disputed tax are not present in illegal exaction suits involving FBAR penalties.  In *Flora I*, the IRS sent the taxpayer a notice of deficiency for income tax.  *Flora I*, 357 U.S. at 63-64.  The taxpayer did not file a petition in the Tax Court but rather paid part of the deficiency, filed a refund claim, and brought suit for a tax refund in district court.  *Id.*  The Supreme Court recounted the history of 28 U.S.C. § 1346(a)(1) and concluded that the statute was not intended to alter the historical practice that a taxpayer must "pay first and litigate later."  *Id*. at 75 (internal citations and quotations omitted).

*Flora II* expanded upon *Flora I*.  In *Flora II*, the Supreme Court reiterated that a claimant must pay the full tax amount prior to filing a tax refund suit under 28 U.S.C. § 1346(a)(1).  *Flora II*, 362 U.S. at 155.  But in reaching its holding, the Supreme Court found the "statutory language . . .  inconclusive and legislative history . . . irrelevant." *Id.* at 152.  Instead, the Supreme Court looked to the nature of "internal-revenue tax" and the refund scheme Congress had devised. *Id.* at 149, 153.  Perhaps most importantly, the Supreme Court noted that the full payment rule was established because permitting partial payment in tax-refund suits could "seriously impair the government's ability to collect taxes."  *Flora II*, 362 U.S. at 164, 176 n.41 & n.43.  Moreover, such a suit would effectively be a suit for a declaratory judgment and would thus contravene Congress's prohibition on declaratory judgments over disputes with respect to Federal taxes. *Flora II*, 362 U.S. at 164.

Here, there is no concern that the collection of FBAR penalties will be seriously impaired without the application of a full payment rule.  Unlike the internal-revenue laws included in section

14

1346, FBAR penalties are enforced primarily through a "civil action to recover a civil penalty." *Compare* I.R.C. §§ 6301-6344 (providing that the IRS can collect internal-revenue penalties through lien or levy) *with* 31 U.S.C. § 5321(b)(2) (providing that FBAR penalties may only be collected through "a civil action to recover a civil penalty."). There are no administrative collection procedures for FBAR penalties with which a partial payment illegal exaction claim would interfere. *See Williams v. Commissioner*, 131 T.C. 54, 57-59 (2008) (holding assessment of FBAR penalties provided in Title 31 are not subject to the deficiency procedures of Title 26 and are therefore outside the Tax Court's jurisdiction.).

    B.    <u>The Footnoted Dictum in *Bedrosian* Is Not Persuasive</u>.

Plaintiff relies heavily on *Bedrosian v. United States*, 912 F.3d 144 (3rd Cir. 2018) to support its assertion that this Court does not have jurisdiction to hear Plaintiff's claims. *See* Pl. Rule 7(b)(1) Mot. at 6-11. However, *Bedrosian* is not persuasive.

In *Bedrosian*, although jurisdiction was not contested, the Third Circuit stated in a footnote that it was "inclined to believe" that an account holder must "pay the full [FBAR] penalty before filing suit," but left "a definitive holding on this issue for another day." 912 F.3d at 149-50 n.1. Notwithstanding its advisory, footnoted statement, the Third Circuit reached the merits of the case because the court found it had jurisdiction over the government's counterclaim. *Id*. at 150.

As dictum from another circuit, the *Bedrosian* footnote does not bind this Court; and, after thorough review, this Court declines to adopt the footnote's conclusory "belief" here. In that case, Mr. Bedrosian had paid only one percent of the assessed penalty before filing an unlawful exaction claim in the district court. *Id*. at 148. The *Bedrosian* footnote is based upon several assumptions. First, the footnote cites to a concurrence in *Wyodak Res. Dev. Corp. v. United States*, 637 F.3d 1127 (10th Cir. 2011) for the proposition that "internal-revenue laws" are defined by their function

and not their placement in the U.S. Code. *Id*. at 149 n.1. Second, the footnote analogizes FBAR reporting penalties to reporting penalties levied pursuant to I.R.C. § 6038(b), which are subject to the *Flora* full payment rule. *Id.* Third, *Bedrosian* relies on another footnote in a United States Tax Court decision for the proposition that not all internal-revenue laws exist in Title 26. *Id*. (citing *Whistleblower 21276-13W v. Comm'r of Internal Revenue*, 147 T.C. 121, 130 n.13 (2016)). Piecing these propositions together, the *Bedrosian* court was "inclined to believe" that FBAR penalties may be subject to the *Flora* full payment rule. However, as noted, "given the procedural posture of this case, [the Third Circuit left] a definitive holding on this issue for another day." *Id*.

Reliance on these assumptions, which upon closer review lend gossamer support to the footnoted dictum, would be in error. First, the concurrence in *Wyodak* actually supports the conclusion that an FBAR penalty is not a tax. In *Wyodak Res. Dev. Corp.*, the Tenth Circuit examined whether 28 U.S.C. § 1346(a)(1) provided jurisdiction for a refund suit for coal reclamation fees paid pursuant to the Surface Mining Control and Reclamation Act of 1977 (SMCRA). 637 F.3d at 1129. The Tenth Circuit found that Congress created the SMCRA's Abandoned Mine Reclamation Fund ("the Fund"), which authorizes the Secretary of the Interior to assess reclamation fees on each ton of "coal produced" in the United States, to advance the SMCRA's goal of restoring mined land. *Id.* In deciding whether a suit for reclamation fees was covered by 28 U.S.C. § 1346(a)(1), the majority held that, "for purposes of district court jurisdiction under 28 U.S.C. § 1346(a)(1), Congress intended the phrase 'internal-revenue tax' to mean taxes collected by the IRS." *Id.* at 1134. In his concurring opinion, then-Judge Gorsuch agreed with the outcome of the majority decision but contended that the inquiry should not be limited to whether the taxes are collected by the IRS. Instead, his concurring opinion argued that

the proper inquiry for "internal-revenue tax" was "whether SMCRA is properly understood as levying a tax or imposing a regulatory fee." *Id*. at 1137.  The concurrence explained:

> If a law's purpose was to regulate private behavior, the costs imposed by it were treated as fees—and so required justification under the legislature's *regulatory* authority . . . .  Meanwhile, a charge imposed for the purpose of raising general revenue was a tax, and so needed to be consistent with the sovereign's authorized *taxing* powers.

*Id.* (emphasis in original) (internal quotation and citations omitted).  The concurrence argued that the SMCRA was not a tax as indicated by, (1) the statute's announced purpose, (2) the statute's reference to its powers to regulate interstate commerce, and (3) the statute's consistent use of the term "fee" as opposed to "tax*.*"  *Id*. at 1138-40.

Applying this functional approach, the BSA — like the SMCRA — has a stated purpose that is regulatory in nature.  Specifically, 31 U.S.C. § 5311 declares that the Act's purpose is "to require certain reports or records where they have a high degree of usefulness in criminal, tax, or regulatory investigations or proceedings, or in the conduct of intelligence or counterintelligence activities, including analysis, to protect against international terrorism."  These functions clearly extend beyond "general revenue raising" and are more akin to a "regulatory fee."  *See Wyodak Resources Dev. Corp.*, 637 F.3d at 1137.  Moreover, Congress's use of the more general term "civil money penalty" in 31 U.S.C. § 5321(a)(5)(A) as opposed to "tax penalty" indicates that Congress intended the FBAR to extend beyond a revenue raising function.  *See United States v. Simonelli*, 614 F. Supp. 2d 241, 246 (D. Conn. 2008) (holding that an FBAR penalty is not a "tax penalty" subject to discharge in bankruptcy under 11 U.S.C. § 523(a)(7), because it "was imposed pursuant to a non-tax law (the Bank Secrecy Act)").

Next, *Bedrosian*'s analogy of the FBAR penalty to an I.R.C. section 6038 penalty misses the mark.  *See* 912 F.3d at 149 n.1.  Any similarities between the FBAR and section 6038 are

superficial.  Though the reporting requirements are similar, the penalties assessed for a violation of these laws are very different.  Importantly, unlike the FBAR penalty, section 6038 penalties are treated as a tax and are subject to pre-suit collection procedures, including lien and levy collection procedures, which are traditionally used to collect taxes under Title 26.  *See e.g.*, *Flume v. Comm'r of Internal Revenue Serv.*, 113 T.C.M. (CCH) 1097, *1 (T.C. 2017) (upholding tax levy issued by IRS to collect section 6038 penalty); *Ruesch v. Comm'r of Internal Revenue*, 805 F. App'x 12, 13-14 (2d Cir. 2020) ) (affirming U.S. Tax Court decision which upheld a tax levy against petitioner for violating, inter alia, section 6038).  This indicates that the FBAR penalty is not textually or functionally similar to a section 6038 penalty.

Lastly, as noted, *Bedrosian* relies on another footnote in a United States Tax Court decision for the proposition that not all internal-revenue laws exist in Title 26.  912 F.3d at 149 n.1. (citing *Whistleblower 21276-13W v. Comm'r of Internal Revenue*, 147 T.C. 121, 130 n.13 (2016)).  *Whistleblower 21276-13W*, which was not an FBAR case, is inapposite and does not support the characterization of the FBAR civil penalty as an internal-revenue law.  Instead, *Whistleblower 21276-13W* addressed the meaning of "collected proceeds" under a previous version of I.R.C. section 7623(b)(1).[8]  Specifically, the Tax Court held that a business's criminal fine and civil forfeitures qualified as "collected proceeds" from which whistleblower claimants would receive a percentage award.  *Id.* at 135, 139.  While the Tax Court held that the term "internal-revenue laws" was not limited to laws codified under the I.R.C., it did not hold that FBAR civil penalties arise under the internal-revenue laws for the purpose of that code section or any other section.

_____

[8] Congress subsequently amended section 7623 to expressly provide that such sums constituted "collected proceeds," mooting the then-pending appeal of the court's *Whistleblower 21276-13W* decision. *See* Pub. L. 115–123, div. D, title II, § 41108(a)-(c), 132 Stat. 158 (2018).

In contrast, the Tax Court has held that FBAR civil penalties are distinguishable from taxes or related penalties. In *Whistleblower 22716-13W v. Comm'r of Internal Revenue*, the Tax Court determined that FBAR civil penalties are not "additional amounts" for purposes of section 7623(b)(5) threshold calculations.[9]   146 T.C. 84, 93-95 (T.C. 2016).   In reaching this determination, the Tax Court reasoned that "FBAR civil penalties are not among the tax-related penalties enumerated in chapter 68, and they are not 'assessed, collected, and paid in the same manner as taxes.'" *Id.* at 95 (quoting I.R.C. 665(a)(1)). Further, in a different case, the Tax Court held that it lacks jurisdiction over FBAR civil penalties, emphasizing that such penalties are "authorized in Title 31 ('Money and Finance') of the United States Code, not Title 26 (the Internal Revenue Code)." *Williams v. Comm'r of Internal Revenue*, 131 T.C. 54, 56-57 (T.C. 2008). Although not dispositive to the issue at hand, the reasoning of Tax Court in each of these three cases is informative and further calls into question the dictum in the *Bedrosian* footnote.

It may be accurate that every internal-revenue law is not necessarily contained in Title 26. However, Congress's specific placement of the FBAR in Title 31, the stated purpose of the BSA, and the fact that Congress chose not to employ traditional tax collection procedures to recover FBAR penalties collectively demonstrate that Congress did not intend to subject FBAR penalty suits to the *Flora* full payment rule.

---

[9] Section 7623(b)(5) permits a nondiscretionary whistleblower award if the claim satisfies certain monetary thresholds. *See* I.R.C. § 7623(b)(5). One of those thresholds requires the petitioner to show that "tax, penalties, interest, additions to tax, and additional amounts in dispute exceed $2,000,000" with respect to his claim. *See* I.R.C. § 7623(b)(5)(B). At issue in *Whistleblower 22716-13W* was whether FBAR payments constituted "additional amounts" within the meaning of section 7623(b)(5)(B). 146 T.C. at 92, 100. The Tax Court ruled that FBAR penalties were not such "additional amounts" and must be excluded from determining whether the $2,000,000 "amount in dispute" requirement was satisfied. *See id.* at 96.

II.  Plaintiff's Rule 41(a)(2) Motion Fails because Rule 41(a)(2) Does Not Permit this Court to Dismiss Plaintiff's Complaint and Transfer Defendant's Counterclaim.

Once the defendant files its answer, Rule 41(a)(2) allows dismissal at the plaintiff's request "only by court order, on terms that the court considers proper."  Furthermore, "if the defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication."  Rule 41(a)(2).

Here, all parties agree that this Court does not have independent jurisdiction over Defendant's counterclaim.  *See* Pl. Rule 41(a)(2) Reply at 4; Def. Resp. to Mot. for Voluntary Dismissal at 4-5.  Accordingly, the Court cannot grant Plaintiff's motion for voluntary dismissal pursuant to Rule 41(a)(2) over Defendant's objection because Defendant's counterclaim is not one that "can remain pending for independent adjudication."  Rule 41(a)(2).  Notwithstanding the plain import of Rule 41(a)(2), Plaintiff argues that Defendant's counterclaim "can remain pending" because, under 28 U.S.C. § 1631, this Court could cure the jurisdictional defect created by Plaintiff's voluntary dismissal by transferring Defendant's counterclaim to the district court.  Pl. Rule 41(b)(2) Mot. at 2-6.  In response, Defendant argues that its counterclaim would no longer "remain pending" as required by Rule 41(a)(2) if the Court transferred it.  Def. Resp. to Mot. for Voluntary Dismissal at 4-6.

The Court agrees with Defendant.  Under section 1631, a court can transfer an action if the transfer is, among other things, "in the interest of justice" and if the "court finds that there is a want of jurisdiction."  As discussed above, this Court has subject-matter jurisdiction over Plaintiff's illegal exaction claim but does not have independent jurisdiction over Defendant's counterclaim.  *See supra* Section I.  Plaintiff's peculiar insistence to dismiss his own complaint appears to be for no reason other than to manufacture a "want of jurisdiction" in order to avoid the

Federal Circuit's binding precedent in *Norman v. United States*, 942 F.3d 1111, 1114 (Fed. Cir. 2019).  This Court will not permit such gamesmanship.  Under Plaintiff's suggestion, section 1631 could be used, not to cure a want of jurisdiction, but to create one that would undoubtedly be used to attempt to dismiss Defendant's counterclaim.  Indeed, if courts were to permit the type of transfer Plaintiff suggests, any plaintiff who becomes dissatisfied with the Federal Circuit's jurisprudence could voluntarily dismiss his complaint notwithstanding a defendant's counterclaim. Such a transfer is contrary to the text of the statute and is not "in the interest of justice."

Such a transfer would also be contrary to the plain language of Rule 41.  As noted, pursuant to Rule 41(a)(2), "if the defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication."  Words in rules and statutes should be given their ordinary meaning.  *See Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 227 (2014) (Scalia, J.) ("It is a fundamental canon of statutory construction that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning.") (internal quotations omitted) (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)).  The ordinary meaning of the word "remain" is "to stay in the same place or with the same person or group" or "to continue unchanged."  Merriam Webster's Collegiate Dictionary at 1052 (11th ed. 2006). Thus, under Rule 41(a)(2)'s plain language, Defendant's counterclaim must "remain" pending in this Court for independent adjudication and not just be capable of adjudication in any court in the country.

Prior to a 2008 amendment, Rule 41(a)(2) provided that, when a counterclaim is pending, "the action shall not be dismissed against the defendant's objection unless the counterclaim can remain pending for independent adjudication *by the court*."  (emphasis added).  While the 2008

amendment deleted the "by the court" language, it did so "to conform to the general restyling of the FRCP" in 2007.  RCFC 41, Rules Committee Notes, 2008 Amendment.  Federal Rule of Civil Procedure 41 in turn was amended in 2007 "as part of the general restyling of the Civil Rules . . . to make style and terminology consistent throughout the rules," and "the changes [we]re intended to be stylistic only."  Fed. R. Civ. P. 41, Committee Notes on Rules – 2007 Amendment.  Where committee notes of the Federal Rules of Civil Procedure indicate that restyling is non-substantive, it is presumed that the new language does not amend a prior enactment unless it so clearly states. *See* A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 257 n.4 (2012) (citing Fed. R. App. P. 1, Committee Notes on Rules – 1998 Amendment's statement that "[t]he language and organization of the rule are amended to make the rule more easily understood . . . These changes are intended to be stylistic only," as an example of an amendment which does not change the meaning of a prior enactment).  Thus, the 2008 amendment did not change the substance of Rule 41(a)(2), including the requirement to deny a dismissal request when a counterclaim could no longer be adjudicated by the same court.

Allowing voluntary dismissals that "unfairly affect" the defendant would also be contrary to the primary purpose of Rule 41(a)(2).  *See Whyde v. United States*, 51 Fed. Cl. 635, 637 (2002). Generally, a party cannot seek to dismiss an action "merely to escape an adverse decision [or] to seek a more favorable forum."  *Hamm v. Rhone-Poulenc Rorer Pharmaceuticals, Inc.*, 187 F.3d 941, 950 (8th Cir. 1999).  Allowing Plaintiff to do so could create a dangerous precedent that would undoubtedly lead to forum shopping.

Plaintiff argues that this Court should dismiss Plaintiff's complaint over Defendant's objection because Defendant's pending counterclaim "will survive" if the Court were to transfer it to a district court under 28 U.S.C. § 1631.  Pl. 41(a)(2) Mot. at 2-3.  In support of transfer,

Plaintiff cites *New Mexico ex rel. Energy & Minerals Dept., Min. & Minerals Div. v. United States Dept. of Interior*, 820 F.2d 441 (D.C. Cir. 1987).  *See* Pl. 41(a)(2) Mot. at 3.  In *New Mexico*, the State of New Mexico challenged United States Department of Interior (DOI) regulations, and the Navajo Tribe intervened as a defendant.  820 F.2d at 443.  New Mexico and DOI entered into a settlement agreement; pursuant to the settlement, the district court dismissed both the underlying complaint with prejudice and the Tribe's counterclaim for want of jurisdiction.  *Id.*  On appeal, the United States Court of Appeals for the District of Columbia Circuit (D.C. Circuit) held that the district court's dismissal of the underlying complaint was proper, but also found that the district court had authority to transfer, and should have transferred, the Tribe's counterclaim under 28 U.S.C. § 1631.  *Id.* at 445-46.  Transferring the case to the United States District Court for the District of New Mexico, the D.C. Circuit reasoned, would have both "placed the litigation in the state where both parties are found" and "honor[ed] Congress'[s] preference for the locus of the actions brought under [the relevant statute]."  *Id.* at 447.

*New Mexico* is inapposite to the present case.  In *New Mexico*, the parties moved for voluntary dismissal *with prejudice*.  820 F.2d at 443.  Here, Plaintiff moves to dismiss his action *without prejudice*.  Pl. 41(a)(2) Mot. at 2.  The distinction is important.  Dismissal with prejudice effectively precludes the movant from filing the action again in another court under the principles of res judicata.  In contrast, dismissal without prejudice, as Plaintiff requests here, creates an unacceptable risk of forum shopping.  Moreover, the *New Mexico* court found that transfer was appropriate and "in the best interests of the parties and the court" under 28 U.S.C. § 1631.  820 F.2d at 447.  Here, however, Plaintiff's proposed dismissal will simply allow Plaintiff to relitigate its claim and defend against Defendant's counterclaim in a jurisdiction Plaintiff perceives as more favorable, without furthering any interest in judicial economy.  Transfer for this reason would not

be in the collective parties' best interests and would not be, as section 1631 requires, "in the interest of justice."

CONCLUSION

For these reasons, the Court **DENIES** Plaintiff's Motion to Dismiss for Lack of Jurisdiction (ECF No. 30), **DENIES** Defendant's Cross-Motion to Transfer Venue (ECF No. 34), and **DENIES** Plaintiff's Motion to Dismiss under RCFC 41(a)(2) (ECF No. 47).  Within fourteen (14) days of this Memorandum and Order, the parties shall submit a joint status report, including a proposed schedule for future proceedings.

IT IS SO ORDERED.

s/Eleni M. Roumel<br>ELENI M. ROUMEL<br>Judge

Dated: April 7, 2021
Washington, D.C.